Muse, Christopher J., J.
INTRODUCTION
Plaintiff, Kathleen O’Leary (“Ms. O’Leary”), filed claims of intentional infliction of emotional distress, *415 negligent infliction of emotional distress, breach of contract, and tortious interference of contract, against Defendants Cape Code Healthcare, Inc. (“CCHC”) and its facility, JML Care Center (“JML”) after her employment with Defendants was terminated on or about May 24, 2011. Before this Court is Defendants’ motion to dismiss Counts III and IV of Plaintiff s Complaint pursuant to Mass.R.Civ.P. 12(b)(6). For the following reasons, Defendants’ motion is DENIED.
BACKGROUND
This action arose following Plaintiffs termination of employment as a Discharge Planner by Defendants CCHC and JML. Plaintiff has been a Licensed Practical Nurse (“LPN”) in the state of Massachusetts since 1969, and was employed at JML for approximately eight years. At JML, Plaintiffs most recent position was that of Discharge Planner, which she held for six years.
JML is an affiliate of CCHC whose function is to provide skilled nursing and rehabilitation to CCHC’s Falmouth Hospital Facility.
Plaintiffs Complaint alleges that on May 5, 2011, a patient of JML called for medical help because of a believed acute shortness of breath. Plaintiff alleges that she, along with two other nurses, responded to the patient for evaluation, as well as notifying the Medical Director, Dr. Devin A. McManus (“Dr. McM-anus”), as prescribed by JMLs Rapid Response Team Policy and Procedures (“RRTPP”) (although Dr. McM-anus was not immediately reached). Plaintiff further alleges that per the patient’s request, she had him transferred to Falmouth Hospital, where he was then transferred to Mass General Hospital.
Finally, Plaintiff alleges that when Dr. McManus was informed of the transfer, he became upset and barred Plaintiff and one of the other two nurses from further seeing any of his patients. Subsequently, Plaintiff alleges that she was informed that Dr. McM-anus had threatened to leave his position at JML unless she and the other nurses were reprimanded. On or about May 24, 2011, Plaintiff received a letter from JMLs Vice President of Nursing, Cynthia Lehtinen, stating that Plaintiff would no longer be employed as Case Manager at JML.
In counts III and IV of her Complaint, Plaintiff claims that her termination by JML from her position as Case Manager was a wrongful discharge in violation of public policy constituting a breach of contract (count III) and a tortious interference of contract (count IV).
Defendants claim that Plaintiff cannot recover because her termination, and thus counts III and IV, were a concern of JML’s internal policy and practice— not public policy — and therefore these counts must be dismissed as a matter of law. Additionally, Defendants allege that because CCHC and JML were parties to the admittedly at-will employment agreement with Plaintiff, they cannot be held liable for tortious interference of the same. In her Opposition, Plaintiff maintains that she has pled sufficient allegations that Defendants’ actions — terminating Plaintiff on the basis of a patient’s transfer to a hospital per his own request— were a direct and substantial violation of public policy. In addition, Plaintiff maintains that Dr. McManus, individually, not CCHC or JML as the contracting parties, tortiously interfered with her employment contract (the Complaint states that “The Defendant tortiously interfered with the Plaintiffs employment agreement by its unexpected termination of the Plaintiffs position at JML to her detriment”).
DISCUSSION •
The Supreme Judicial Court has adopted the standard of review for motions to dismiss set forth by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), which states: “While a complaint attacked by a . . . motion to dismiss does not need detailed factual allegations ... a plaintiffs obligation to provide the ‘grounds’ of his entitle [ment] to relief requires more than labels and conclusions ... Factual allegations must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...” Iannacchino, 451 Mass. at 636, quoting Bell Atl. Corp., 550 U.S. at 555-56 (internal quotations omitted). Under this heightened standard, what is required at the pleading stage are factual allegations that possess enough heft to show that the pleader is entitled to relief. Id.
Defendants rely on Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469 (1992), in which the SJC held that the trial judge had erroneously ruled that the code of ethics applicable to doctors and nurses establishes a public policy foundation for a claim of wrongful termination. In response to the Wrights argument that the MA regulations governing the responsibilities and functions of a registered nurse create a public policy foundation, the SJC noted that it has “never held that a regulation governing a particular profession is a source of well-defined public policy sufficient to modify the general at-will employment rule.” Id. at 474. Therefore, Defendants argue, Plaintiff has failed to allege that her termination violated a recognized public policy that will support a claim for wrongful termination of an at-will employee.
However, in the present case, Plaintiff is not attempting to claim that either a code of ethics or state regulations governing her profession’s responsibilities create a source of public policy. Rather, this Court views Plaintiffs claim to be that the now-deceased patient’s right to quality medical care, and specifically, his right to be taken to a hospital on his own request, is a recognized and important public policy, and Plaintiffs termination for adherence to this policy is the basis of her wrongful termination claim. Indeed, in Wright, the plaintiff was allegedly fired for filing an *416 internal report regarding patient care, whereas Ms. O’Leary is alleging termination was predicated on her decision to transfer a critically ill patient to the hospital at his request, a patient who, it should be noted, was so seriously ill that he subsequently died.
Assuming the allegations contained in Ms. O’Leary’s Complaint are true, as required when deciding on a motion to dismiss, Plaintiff has pled sufficient grounds of her entitlement to relief. Therefore, this Court finds that dismissal of Counts III and IV is inappropriate at this time.
CONCLUSION
For the foregoing reasons, Defendants’ motion to dismiss is DENIED.